IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

DAVID R. POWELL, SR.                                                                                              PLAINTIFF

v.                                       No. 5:04CV00236 GH

TPI PETROLEUM, INC.                                                          DEFENDANT

## **ORDER**

On June 21, 2004, plaintiff filed suit, pursuant to diversity jurisdiction, for breach of contract and conversion arising out of the removal by defendant of underground storage tanks and piping from the leased property used as a convenience store and retail automotive fuel facility. Defendant filed an answer and counterclaim on July 13, 2004, for declaratory judgment and breach of contract under the same lease agreement.

Defendant filed a motion for summary judgment on March 25th supported by brief, exhibits, and a separate statement of undisputed facts. It contends that it is entitled to summary judgment as a matter of law because the fuel system removed from the leased property during environmental remediation was permitted to be severed and removed under the lease agreement and because it was a trade fixture and not a real estate fixture. Defendant asserts that the uncontroverted evidence shows that the furl system at the Dumas store was installed by its predecessor-in-interest with the full intention to retain ownership and control over the fuel system at the time of its installation and throughout the lease term; that the fuel system was installed solely for the operation of the business at the Dumas store; that the lease agreement specifically contemplated the severance and removal

-1-

of the fuel system during or within 30 days of lease termination; and that the fuel system was properly a trade fixture and not a real estate fixture as defined by Arkansas law thereby permitting its removal. It continues that, as plaintiff drafted key language in the lease, any ambiguity must be construed against him and the Court should consider that plaintiff has never registered as an owner of the tanks at the Dumas store as required by Ark. Code Ann. §8-7-813(a) and Regulation 12 of the Arkansas Pollution Control and Ecology Commission and having registered other underground tanks with the State although defendant had registered the tanks as the owner of the fuel system.

Also on March 25th, plaintiff filed a motion for partial summary judgment supported by brief with a statement of undisputed facts and exhibits. He seeks judgment that the underground storage tanks removed from the real property by defendant constituted fixtures to plaintiff's real property as a matter of law; that because the underground storage tanks and piping were real estate fixtures they became the property of the plaintiff upon the termination of the lease; that defendant's removal of the underground storage tanks and piping was a breach of the lease because defendant failed to return to the landlord the land and premises leased with the improvement thereon in as good condition as the same were in when the lease began; that defendant's removal of the underground storage tanks constitutes conversion, and that plaintiff is entitled to recover reasonable attorney's fees incurred in bringing this action pursuant to the lease.

Defendant responded to plaintiff's motion on April 6th stressing that the primary factor in evaluating fixtures is the annexing party's intent and here there is significant evidence that Road Runner and later defendant intended to maintain ownership and control of the fuel system. It continues that the case mainly relied upon by plaintiff is inapplicable as it involved a claim by a third-party supplier for equipment installed on an owner's property by the tenant, the lease language

is different as this lease uses the term sever which contemplated the removal of items from the property after those items became attached to the real estate, and the lease agreement not only lists certain items that can be removed but "other [sic] any part of same" and all have indicated that the entire fuel system is considered a single unit. Defendant further argues that intervening statutes and environmental regulations since 1984 have made it impossible to return the property to the "same condition"and the parties did not contemplate a change in the law. Defendant filed its response to plaintiff's statement of facts on April 14th.

On April 7th, plaintiff responded to defendant's motion as well as its statement of facts. He argues that the lease is not ambiguous and, even if it were, the Court could not apply extrinsic evidence at this stage. Plaintiff insists that the Arkansas appellate court has ruled as a matter of law that storage tanks are real estate fixtures where they could not be removed without serious injury to the realty and the requisite intent was supplied by the terms of the lease under review and not defendant's subjective intent. He continues that while storage tanks were specified in what could be installed, they were not listed in the removal paragraph. Plaintiff also contends that Road Runner was the original drafter and that he negotiated changes that were approved by Road Runner's two lawyers.

Summary judgment can properly be entered when there are no genuine material facts that can be resolved by a finder of fact; that is, there are no facts which could reasonably be resolved in favor of either party. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2512 (1986). The non-moving party may not just rest upon his or her pleadings, but must set forth specific facts showing

that there is a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986); Civil Procedure Rule 56. "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather the dispute must be outcome determinative under prevailing law." Holloway v. Pigman, 884 F.2d 365, 366 (8th Cir. 1989).

Local Rule 56.1 provides that a party moving for summary judgment must file a separate, short and concise statement of material facts as to which it contends there is no genuine issue to be tried. The rule further provides that unless the non-moving party files a separate, short and concise statement of the material facts as to which it contends a genuine issue exists to be tried, all material facts set forth in the moving party's statement will be deemed admitted.

Plaintiff's Local Rule 56.1 statement is set out below with defendant's response contained in brackets:

1.  Plaintiff, David R. Powell, Sr., in an Arkansas citizen and resident of McGee, Desha County, Arkansas. [Admitted. However, TPI does not believe this is a material fact.]

2.  Defendant TPI Petroleum, Inc. ("TPI") is a Michigan corporation with its principal office in San Antonio, Texas. [Admitted. However, TPI does not believe this is a material fact.]

3.  The Lease attached as Exhibit A to plaintiff's complaint is a true and correct copy of the lease at issue in this lawsuit. [Admitted, however, TPI would also assert that the Lease agreement, in addition to different fonts and typesetting beginning on page 6, also contains different paper sizes beginning on page 6.]

4.  TPI is the successor in interest to Road Runner Properties. At the time of the termination of the lease, TPI was the responsible party under the Lease as the successor in interest to the Lessee. [Admitted.]

5. Plaintiff David R. Powell is the owner of the real property relevant to this lawsuit, and is the successor in interest to Mr. Drexell Powell (plaintiff's deceased father), who was the original landlord and signatory to the Lease. [Admitted.]

6. The Lease remained in force and effect until it was terminated at the end of the Lease term (after multiple renewals) on March 31, 2003. Just prior to the date of Lease termination in March 2003, TPI removed from the leasehold property the existing underground storage tanks and associated piping used to store and dispense motor fuels for the retail fuel operation. [Admitted.]

7. A fuel dispensing system (including underground storage tanks) is necessary for the operation of a retail automotive fuel facility. [Admitted.]

8. At the time Road Runner, TPI's predecessor-in-interest, took over the leasehold, a Gulf service station was operated on the property. The Gulf station included four 3,000-gallon underground fuel tanks and a 560-gallon waste oil tank. [Admitted.]

9. When Road Runner took over the leasehold, it remodeled and added on to the existing Gulf service station, removed the existing underground storage tanks, and installed four 10,000-gallon underground storage tanks and new underground piping. [Admitted.]

10. The underground storage tanks installed by Road Runner, and later removed by TPI, were buried under several feet of soil, connected to underground piping leading to fuel pumps, and covered with concrete paving. [Admitted.]

11. Prior to the time that TPI removed the underground storage tanks, Plaintiff David Powell informed TPI of his position that the underground storage tanks were real estate fixtures and part of the leasehold. [Admitted.]

12. The leasehold property cannot be operated as a retail fuel facility without fuel storage tanks. [Admitted.]

Defendant's Local Rule 56.1 statement is set out below with plaintiff's response contained in brackets:

1. TPI is the successor-in-interest to the lease agreement executed between Drexel Powell and Road Runner Properties. [Admitted.]

2. Road Runner Properties leased the real property subject to the lease agreement for the operation of a convenience store business. [Admitted.]

3. The lease agreement authorized the installation of trade fixtures, including underground storage tanks, associated piping, pumps, compressors and other machinery necessary for a fuel dispensing system to be used to sell gasoline and diesel products to customers of the convenience store business at the leased property. [Disputed . The lease does not refer to "trade fixtures" in any provision. This is TPI's characterization or argumentative application of law to facts and is not appropriate in a statement of undisputed facts. Powell admits that in Lease paragraph 3.01 the Lease contains this language:

> 3.01. Use of Premises. Tenant shall have the right from time to time, as it may desire, to build or rebuild such buildings, structures, drives and pump islands, and to install such storage tanks, pumps, lifts, hoists, and other equipment; and to make such other installations and constructions as it deems proper for sale and distribution of petroleum products, automobile accessories and/or as a convenience store for the sale of food stuffs upon the premises and to construct means of ingress to and egress from the same. Tenant agrees to comply with all health, safety, and sanitary laws and regulations pertaining to the demised premises.]

4. After execution of the lease agreement, TPI's predecessor-in-interest installed four (4) ten thousand gallon underground storage tanks, associated piping, pumps and other machinery necessary for dispensing fuel to customers of the convenience store business. [Admitted.]

5. The only purpose of the installation of the fuel dispensing system was for the operation of the business. [Admitted.]

6. Road Runner, at all times during the lease term, intended to maintain ownership of, control over, and responsibility for the fuel dispensing system, including the underground storage tanks, associated piping, pumps, and other parts of the fuel dispensing system. [Disputed. The best, and only objective, indication of Road Runner's intent is the language of the Lease itself. The lease requires that real property improvements become the property of Landlord. See paragraph 3.02 ("All such buildings, structures and improvements placed upon the leased premises by Tenant during the continuance of said Lease of the kind and character normally deemed in law to become a part of the realty, shall be and remain the property of Landlord ...."). Powell admits that TPI was required by the lease to maintain responsibility for and control over the underground storage tanks in all respects during the lease term. See Lease paragraphs 3.01 ("Tenant agrees to comply with all health, safety, and sanitary laws and regulations pertaining to the demised premises."); 6.13 (Tenant "... shall comply with any and all applicable ... federal, state and local laws, ordinances, as exist now or hereinafter come into force, including but not limited to, those governing dispensing equipment, pollution, the use, maintenance and labeling of product storage tanks, the prevention of spills, leaks, venting or other improper escape from product containers or storage tanks, and

the method of cleanup or disposal or product which has leaked, spilled, vented or otherwise improperly escaped from containers or storage tanks.").

7. TPI as successor-in-interest to Road Runner, at all times during the lease term, intended to maintain ownership of, control over, and responsibility for the fuel dispensing system, including the underground storage tanks, associated piping, pumps and other parts of the fuel dispensing system. [The subjective intent of TPI is disputed and irrelevant. The Lease language itself supplies the objective intent of the parties thereto, and TPI is bound by Road Runner's expression of intent in the Lease. This paragraph is really an argument about the legal effect of TPI's actions in controlling and maintaining the fuel system during the lease term, as required by the Lease.]

8. TPI's successor-in-interest purchased all of the machinery and equipment necessary for the installation of the fuel dispensing system. [Powell assumes that this statement contains an error because there are no issues or facts in the record about TPI's successor-in-interest. Powell admits that TPI's predecessor-in-interest purchased all of the machinery and equipment necessary for the installation fo the fuel dispensing system.]

9. Neither Road Runner nor TPI intended the fuel dispensing system to become permanently affixed to the real estate as a real estate fixture.[Disputed. The Lease demonstrates that Road Runner intended for the underground storage tanks to become real estate fixtures. Compare Lease paragraphs 3.01 and 3.02. Furthermore, the fact that the tanks were buried under several feet of soil, connected to underground piping, and covered with concrete paving demonstrate intent that the tanks were to be permanently affixed to the real property.]

10. TPI and its predecessors-in-interest registered the underground storage tanks at the leasehold property with the Arkansas Department of Environmental Quality as the owner of the underground storage tanks during the term of the lease agreement. [Powell admits that these parties signed ADEQ forms as the "owner," but denies that the regulatory term, in the context of reporting a regulated activity, has any significance in interpreting whether the tanks became real estate fixtures under the Lease. The Lease required the Tenant to perform all reporting and regulatory obligations like tank registration. TPI did not create the ADEQ form that includes the "owner" label.]

11. Plaintiff did not register, or at any time attempt to register, the underground storage tanks at the leasehold property with the Arkansas Department of Environmental Quality, or any other governmental agency, as an owner pursuant to A.C.C. §8-7-811. [Powell admits that he did not register the underground storage tanks with ADEQ because the Lease required the Tenant to do that.]

12. Plaintiff drafted the lease language in Section 3.02 and also beginning on page 6 of the lease agreement. [Powell admits that he drafted most of the language beginning on page 6 of the Lease. Powell testified that the language he supplied probably started with paragraph 6.08, and he is sure he supplied everything from 6.11 to the end. Powell disputes the remainder of Defendant's statement no. 12 as a misleading summary of Powell's testimony. Powell testified that he was "90 percent positive" that he drafted some of the wording in Lease paragraph 3.02. Upon questioning about whether he deleted specific words in that provision, Powell said "I don't remember." Powell remembers making some changes, but doesn't remember the language of the provision before he made changes. In addition, George Lease,

the lease agent for Road Runner, testified that Road Runner drafted the original lease form. "Normally a sample lease would have been delivered or mailed to the lessor, Mr. Powell in this case, and he would have been given the opportunity to review it with counsel or whoever else he was considering getting some assistance in terms of any of the legal language in it .... Those were items that were essentially the boiler plate, if you will, was used on this particular case and just plugging in the dates of the terms and the financial conditions." A more true and accurate statement of the facts is as follows: Road Runner drafted the lease and Powell modified the language before the parties agreed on and executed the final Lease.]

The Arkansas Court of Appeals dealt with the issue of fuel storage tanks and a canopy in the case of Dobbins v. Lacefield, 35 Ark.App. 24, 25-29, 811 S.W.2d 334, 334-336 (1991) as illustrated in the following excerpts:

> The lease further provided that "Any improvements placed on the premises by Lessee shall become the property of Lessor upon termination of this lease."
>
> Pittman constructed a building on the property and appellees, as petroleum distributors, supplied him with certain equipment to be used in connection with his business, including three 6,000-gallon underground gasoline storage tanks and a 24-foot by 32-foot canopy, which are in issue here. The gasoline tanks were installed by digging a 20-foot by 30-foot hole, 10 feet deep, with a backhoe. The tanks were placed in the hole by use of heavy equipment, packed with washed sand, and attached to underground electrical cables and pipes that connected the tanks to the above-ground dispensers. In order to remove the tanks, a backhoe and other heavy equipment would be required. The canopy was erected on two poles set in concrete with underground cables running to the canopy from the gasoline dispensers. In order to remove the canopy, a cutting torch must be used to cut the two steel poles, leaving the concrete island. It would take three people two days to disassemble the top portion of the canopy.
>
> \*\*\*\*
>
> The test for determining whether items are fixtures is: (1) whether the items are annexed to the realty; (2) whether the items are appropriate and adapted to the use or purpose of that part of the realty to which the items are connected; and (3) whether the party making the annexation intended to make it permanent. McIlroy Bank and Trust v. Federal Land Bank,

-10-

> 266 Ark. 481, 585 S.W.2d 947 (1979). The issue of whether chattels that have been firmly affixed to the real estate have retained their character as movables is ordinarily one for the jury to resolve. Thomas Cox & Sons Machinery Co. v. Blue Trap Rock Co., 159 Ark. 209, 251 S.W. 699 (1923).
>
> \*\*\*\*
>
> Appellee further offered testimony of custom and usage among petroleum products distributors for the limited purpose of proving his intention and understanding with Pittman.
>
> \*\*\*\*
>
> The written lease agreement between appellant and Pittman provided that any improvements placed on the premises by Pittman shall become the property of appellant upon termination of the lease. There is no evidence to the contrary that appellees' equipment had been attached to appellant's real estate in such a manner that it could not be removed without serious injury to the realty and was appropriate and adapted to the use or purpose of that part of the realty. There is no evidence that appellant had any knowledge of, or that he acquiesced in, any agreement between appellee and Pittman. Therefore, on the facts of this case, we conclude that the finding that this property so firmly affixed to the land had retained its character as chattels is not supported by substantial evidence.

See also, Brown v. Blake, 86 Ark.App. 107, 116, 161 S.W.3d 298, 304 (2004):

> Although it is true that there are cases, cited by appellee, in which similar installations were found to have been fixtures, rather than personalty, see e.g., Corning Bank v. Bank of Rector, 265 Ark. 68, 576 S.W.2d 949 (1979); Dobbins v. Lacefield, 35 Ark.App. 24, 811 S.W.2d 334 (1991); Barron v. Barron, 1 Ark.App. 323, 615 S.W.2d 394 (1981), it does not follow that the building is a fixture as a matter of law. The question of whether particular property constitutes a fixture is usually a mixed question of law and fact. Corning Bank, supra.
>
> Appellee's argument focuses on the permanent nature of the building and not on appellants' intent, as evidenced by the lease, when erecting the building. The supreme court has indicated that the intentions of the party making the annexation is the most important test. Pledger v. Halvorson, 324 Ark. 302, 921 S.W.2d 576 (1996); Kearbey v. Douglas, 215 Ark. 523, 221 S.W.2d 426 (1949).

The Arkansas appellate court again addressed the issue of fixtures in Adamson v. Sims, 85 Ark.App. 278, 284-285, 151 S.W.3d 23, 26-28 (2004) as reflected in the following summary:

> We turn now to appellant's argument that the trial judge erred in characterizing the hangar as a fixture. The question of whether particular property constitutes a fixture is sometimes

one of fact only but usually is a mixed question of law and fact. CorningBank v. Bank of Rector, supra. A fixture has been defined by our supreme court as property, originally a personal chattel, that has been affixed to the soil or to a structure legally a part of the soil and, being affixed or attached to the realty, has become a part of the realty. See Continental Gin Co. v. Clement, 176 Ark. 864, 4 S.W.2d 901 (1928). It is annexed to the freehold for use in connection therewith and so arranged that it cannot be removed without injury to the freehold. See id. The courts have devised a three-part test to determine whether an article is a fixture: (1) whether it is annexed to the realty; (2) whether it is appropriate and adapted to the use or purpose of that part of the realty to which it is connected; (3) whether the party making the annexation intended to make it permanent. See Pledger v. Halvorson, 324 Ark. 302, 921 S.W.2d 576 (1996). The third factor – the intention of the party who made the annexation – is considered of primary importance. Id.; Kearbey v. Douglas, 215 Ark. 523, 221 S.W.2d 426 (1949). The courts use an objective test to arrive at the annexer's intention. See Pledger v. Halvorson, supra.

\*\*\*\*

Our courts have decided several cases on the issue of whether large structures are fixtures or personalty, and the outcome of those cases has depended upon their particular facts. A structure was held to be a fixture in Corning Bank v. Bank of Rector, supra, where an expert opined that it would be impractical to remove 22-foot-by-21-foot grain bins with 7,000-bushel capacities attached to the ground by 12-foot deep footings. A structure was also ruled a fixture in Dobbins v. Lacefield, 35 Ark.App. 24, 811 S.W.2d 334 (1991), where a canopy was set in concrete with underground cables and gasoline tanks were placed in 20-foot-by-30-foot holes that were 10 feet deep and could be removed only by a backhoe, and in Barron v. Barron, 1 Ark.App. 323, 615 S.W.2d 394 (1981), where grain-storage bins and a shop building were set in deep concrete and the cost of moving and reassembling a new bin would cost as much as buying a new one. In contrast, mobile homes were held not to be fixtures in Pledger v. Halvorson, supra, even though they had been placed on concrete foundations with extensive modifications and had no tongues, axles, or wheels. In addition, see Garmon v. Mitchell, 53 Ark.App. 10, 918 S.W.2d 201 (1996), holding that grain bins were not fixtures, and Farmers Mutual Insurance Co. v. Denniston, 237 Ark. 768, 376 S.W.2d 252 (1964), holding that a house trailer was not a fixture. See also In re Hot Shots Burgers & Fries, Inc., 147 B.R. 484 (E.D. Ark. 1992), ruling that a fast-food building constructed from prefabricated modules was not a fixture.

We distinguish this case from those cited above in which large structures were held to be fixtures. In each of those cases, strong evidence of the annexing party's intention to treat the structure as chattel was lacking. In the case at bar, there was considerable evidence, as set out earlier in this opinion, that McRae, the annexing party, intended to treat the structure as personalty. Further, there was equally strong evidence that the owner of the realty, the Pemberton Trust, shared that intention. Thus, the third factor in the test, which is the factor of primary importance, operates in favor of appellant. As in Pledger v. Halvorson, supra, the intention of the parties, being the crucial consideration, should govern.

Based on the above analyses, the Court now applies the three-part test to the facts presented here. First, it is undisputed that the fuel tanks were annexed to the property; indeed, they were buried several feet deep. The second factor is also present for the tanks being appropriate for use at the convenience store. However, the Court cannot say as a matter of law that the third factor of intent has been met. The Arkansas courts have stressed the importance of the objective intent of the parties and while they have focused on that intent from the terms of the lease, the above excerpts also demonstrate that the courts have looked to the particular facts of each case including evidence outside the lease itself. Here, the Court believes that an ambiguity is created by the phrase "other [sic] any part of same" and that, as reiterated by the Arkansas courts, the issue of whether the tanks are a fixture is a mixed question of fact and law and is ordinarily resolved by a jury.

Accordingly, defendant's March 25th motion (#12) for summary judgment and plaintiff's March 25th motion (#14) for partial summary judgment are hereby denied.

IT IS SO ORDERED this 13th day of October, 2005.

*George Howard, Jr*
UNITED STATES DISTRICT JUDGE