IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION


DAVID R. POWELL, SR.                                                    PLAINTIFF


v.                                No. 5:04CV00236 GH


TPI PETROLEUM, INC.                                                    DEFENDANT


**<u>ORDER</u>**

On May 24th, the jury returned a verdict in favor of plaintiff and awarded damages in the amount of $226,500.  Judgment in favor of plaintiff in the amount of $226,500 for breach of contract was entered on May 25th.

The Court had taken defendant's motion for judgment as a matter of law ("JAML") made at the close of plaintiff's case under submission granting leave to file a supporting brief if a verdict was returned in plaintiff's favor.  On June 9th, defendant filed a renewed motion for judgment as a matter of law, motion for new trial, and an alternative motion to alter and amend the judgment.

It first argues that plaintiff failed to present any evidence of his damages resulting from or related to the alleged breach of the lease agreement as he submitted no evidence of the costs to repair and legally sufficient evidence on damages for this lost profits – "lost rents."  Defendant contends that the two "bids" – introduced over its objection – which were prepared by Ozark Equipment Company for the installation of two completely new and differently designed fuel systems were the only evidence offered on his cost to repair measure of damages although he and Ozark's Ron Madding testified that these bids were not an attempt to ascertain the damage, but were for the

installation of new equipment – including equipment not present before the removal of the USTs which would have placed plaintiff in abetter position than he would have been had defendant left the USTs at the leased premises.

Turning to the claim for consequential damages from profits lost from other potential renters of the property, defendant asserts that plaintiff's only offer of evidence as to his lost profits – his allegedly lost rents due to the removal of the USTs – was based on the rental amount in the unexecuted option clause of the expired leased agreement and his guess as to what the property might have rented for if he had allowed negotiations to proceed with third party potential renters – neither of which is a basis for the value of lost rents that rises above the level of speculation and conjecture.  It states that plaintiff admitted that defendant was not required to pay $3,000.00 in rent and offered no testimony that any third party had offered to rent the property for $3,000,00 while the only other evidence concerning the $3,000.00 rental price was defendant's testimony that the property was not worth the $3,000.00 rental price and so its refusal to rent the property for $3,000.00 is the only evidence squarely addressing the fair market value of rent at the property.  Defendant continues that the only evidence presented by plaintiff as to the rental value of the property was his guess that the property could have been rented as a "wing shop," "donut shop" or something other than a gas station for $300.00 to $500.00 per month, but he never allowed rental negotiations to proceed to the point of a rent value being discussed.

Next, defendant argues in the alternative for a new trial because of the improper evidence of bids for new fuel systems was submitted to the jury resulting in an excessive verdict, there was insufficient evidence to support the $226,500.00 verdict as the bids would have put plaintiff in a better position, the evidence that plaintiff presented through those bids supports – at best – the

amount of $19,377.00 for the costs of the USTs without any evidence of the costs for associated piping while the bids provided numerous, non-recoverable cost items which inflated the jury's verdict including for installation.  It again argues regarding the insufficiency of the evidence of lost profits and then that plaintiff made no effort to avoid losing rent until twenty months after learning the lease would terminate as his testimony was that he intended to operate the property himself and presented no evidence of what a fair market rental would have been in 2004, 2005, or 2006 after he decided to release the property.  Defendant maintains that, at best, the Ozark bids would support an award of $88,481 for the cost to prepare the site to install the tanks, the costs of the tank and piping installation and the costs to repair the area over the tanks and piping (soil and concrete) as well as $19,377.00 for the costs of the USTs so that the verdict of $226,500.00 is still not supported even if the jury could have awarded $110,000.00 in lost profits based on plaintiff's speculative testimony.

Defendant also argues that the jury failed to follow the instruction as to trade fixtures as the evidence overwhelmingly indicated that the USTs were trade fixtures which belonged to defendant.  It recounts that the witnesses established that the USTs were installed by defendant's predecessor-in-interest for the operation of its convenience store business; that Road Runner did not intend to make the USTs permanent at the time of their annexation and intended to retain the right to remove them if it should choose; and that defendant was the tenant of plaintiff.  Defendant argues that the question of whether property has become a fixture should be liberally construed in favor of the tenant and the intention of the party making the annexation will generally control so the evidence at trial only supported the factual finding that the USTs were trade fixtures of defendant and removable by defendant.  It continues that the jury also failed to follow the instruction as to damages as the jury obviously became confused by the Ozark bids so that even if the jury found plaintiff was entitled

to $110,000.00 for lost profits, the jury could not have awarded an additional $116,500.00 regarding the remaining elements of damages.  Defendant argues that even if the jury had followed Instruction No. 15 relying on the Ozark bids, the jury could not have awarded more than $19,377.00 for the USTs, would have been required to award an amount less than $88,481.00 for the remaining elements of damages so that even if the jury awarded all of the installation costs in the first bid, the costs of the USTs, and the full amount requested for lost profits, the verdict could not have been more than $217,858.00.  It also points to the jury's note before returning its verdict that inquired whether prejudgment interest and inflation could be included in the award.

Defendant further argues that the Court should have given its proposed instruction that the contract should be construed against the one who drafted the contract as the evidence presented was that the plaintiff drafted the second half of the contract and modified the language concerning the removal of property.

Finally, defendant requests the Court to modify the judgment to conform to the evidence – assuming that it was properly admissible – that the maximum amount of damages the jury could have found was $19,377.00 for the costs of the USTs and $88,481.00 for the costs of preparing the site, installing the USTs, and covering the USTs for an amount not to exceed $107,858.00.  It requests that a new trial be granted unless the plaintiff shall agree to remittitur and entry of an amended judgment in the amount of  $107,858.00.

On June 22nd, plaintiff responded to defendant's combined motion.  He first argues that defendant waived any challenge to the sufficiency of the evidence by failing to renew it motion for judgment as a matter of law at the conclusion of all the evidence.  Plaintiff asserts that neither of the two narrow exceptions to the renewal rule that the earlier motion closely preceded the close of all

the evidence and the Court indicated that the movant need not renew it motion in order to preserve

it right to challenge the verdict are present here.  He argues that the Court's indication that the matter

was being taken under submission did not imply that defendant need to not renew its motion and,

even if it did, there was extensive direct and cross-examination of defendant's witnesses between

the close of plaintiff's case and submission to the jury.

Plaintiff then turns to the merits of the JAML motion.  He contends that his testimony as well

as Madding's was competent evidence on how the two bids represented an accurate valuation of

petroleum equipment and installation depending on two varying approaches and the jury was free

to draw inferences as to what best represented the damages plaintiff suffered.  He continues that he

testified that $3,000 per month was a reasonable rental value for the property if it had been operable

as a convenience store, defendant's own witness conceded on cross-examination that it was

reasonable to expect that the parties to the lease agreed that $3,000 per month was a proper rental

valuation for the time period immediately following the breach of contract until the date of trial and

the jury was also instructed on its ability to award the value of any rent reasonably certain to be lost

in the future.  Plaintiff states that the general verdict of $226,500 is rationally supported by an award

of future lost profits, an award of $110,000 in lost rent plus some amount for future rent when added

to an amount of damages for petroleum equipment and installation which is substantially less than

the $311,000 requested and supported by the evidence.  He points to the testimony of plaintiff and

Road Runner's agent there was not intent that the underground tanks were to be removed which the

jury apparently found in determining intent on trade fixtures in the Court's instructions.

Regarding the new trial request, plaintiff again relies on the testimony that there was no

intent that the tanks would be removed after the lease and that plaintiff and defendant's own witness

confirmed that $3000 per months was reasonable monthly rent for the property.  He states that his testimony and that of Madding's explained how each bid represented two separate approaches to awarding damages for placing the property back to its pre-lease condition as an operating gasoline station and the exact calculations made by the jury are irrelevant as it was a general verdict as the verdict was not beyond any amount that could have properly been awarded based on the evidence. Regarding the instruction concerning ambiguous language, plaintiff asserts that the Court correctly found that the original parties to the lease negotiated the written language of the contract and the intention of the parties was testified to at trial.

For the final argument to amend the judgment seeking a remittitur, plaintiff maintains that the award is supported by the evidence and is clearly reasonable.

On June 28th, defendant filed a reply which initially counters the waiver argument.  It points to the Court deferring a ruling on defendant's oral JAML motion, advising that the motion could be renewed in post-verdict motions, and expressly entered a written order indicating that the motion had been taken under submission and granting leave for filing a brief if the jury returned a verdict for plaintiff.  Defendant continues that only one witness testified after the motion was made and plaintiff offered no additional evidence of damages than that offered before the motion.

Defendant contends that plaintiff did not address the argument that the evidence submitted by plaintiff was not evidence of his damages as neither plaintiff nor his own witness failed to show how those bids were evidence of plaintiff's damages as he is not entitled to damages sufficient to return the property to "an operating gasoline station" whereas plaintiff is only entitled to damages for the cost to prepare the site to install the tanks, the costs of the tanks and piping installation, the costs of tanks and piping, and the costs to repair the area over the tanks and piping.  It argues that

the Ozark bid evidence was only relevant to building a new gas station that is not relevant to

returning plaintiff to the condition he would have been in had defendant not removed the USTs.

Defendant further reiterates that plaintiff testified that he intended to operate the property himself,

he guessed what other renters would have paid, and the unexecuted option is an improper and legally

insufficient basis to support the judgment.  Regarding remittitur, defendant again states that the bids

cannot support the verdict in light of the instruction on damages as that evidence did not related to

his damages but to items exceeding the elements of damages allowed by the instructions.

The Court agrees with defendant that it did not waive any challenge to the sufficiency of the

evidence by failing to renew it motion for judgment as a matter of law at the conclusion of all the

evidence.  The Court specifically took the oral motion under submission and expressly permitted

defendant to file a supporting brief after the jury's verdict.

The Eighth Circuit Court of Appeals recently summarized the standard to be used in

assessing a JAML motion in Tamko Roofing Products, Inc. v. Smith Engineering Co., 450 F.3d 822,

830 (8th Cir. 2006):

> "Judgment as a matter of law is appropriate when 'there is no legally sufficient evidentiary
> basis for a reasonable jury to find for that party.' " Wash Solutions, Inc. v. PDQ Mfg., Inc.,
> 395 F.3d 888, 892 (8th Cir. 2005) (quoting Fed.R.Civ.P. 50(a)(1)).

The appellate court stated in Rustenhaven v. American Airlines, Inc., 320 F.3d 802, 806 (8th

Cir. 2003), the standard utilized in considering a motion for new trial:

> "A motion for new trial is appropriately granted if the verdict is against the weight of the
> evidence and if allowing it to stand would result in a miscarriage of justice."  Lloyd, 291
> F.3d at 508-09.  "On a motion for new trial, the district court is entitled to interpret the
> evidence and judge the credibility of witnesses, but it may not usurp the role of the jury by
> granting a new trial simply because it believes other inferences and conclusions are more
> reasonable."  Van Steenburgh, 171 F.3d at 1160 (citing White v. Pence, 961 F.2d 776,
> 780-81 (8th Cir. 1992)).

Applying these standards, the Court cannot find that defendant is entitled to any relief.  In light of the environmental regulations between when the USTs was installed and when it was removed as well as the improvements in equipment, the Ozark bids were properly admitted and contained an itemization as explained by the testimony of plaintiff and Madding on which the jury could ascertain the elements of damages as outlined in the instructions.  Likewise, the testimony of plaintiff and defendant's witness Miller did indeed provide a factual basis for ascertaining damages for lost rent – both past and future.  In sum, there was sufficient evidence to support the jury's verdict of damages although the exact amount allotted to return the property to the condition prior to the removal of the USTs and the exact amount allotted to rent cannot not be ascertained due to the general verdict format agreed to by the parties.

Concerning the evidence as to trade fixtures, the Court agrees with plaintiff that the evidence was not overwhelming in favor of defendant.  The issue was disputed and there was certainly evidence to support the jury's determination as to the parties' intent.  In addition, the evidence of the efforts of both parties in the drafting of the contract precluded the instruction proposed by defendant in construing the contract language against plaintiff.

As the Court has found no error, defendant is not entitled to judgment as a matter of law, to a new trial or to a remittitur.

On June 6th, plaintiff filed a motion for attorney's fees and costs with supporting affidavit, exhibits, and brief. He seeks fees pursuant to Section 6.07 of the contract and Ark. Code Ann. §16-22-308 as the prevailing party.  While plaintiff sets out the number of hours for each attorney and paralegal and their hourly rate – a sum of $58,391.25, he requests as enhancement to the 33 1/3%

of the total amount recovered as provided in the legal services contract entered into between plaintiff and his counsel – the sum of $75,492.45.  He also seeks costs in the amount of $1,972.34.

Defendant responded on June 22nd that an award of attorney's fees is discretionary under Arkansas law even when a written contract provides for such fees.  It further argues that plaintiff's request for an enhancement of the lodestar calculation is not warranted as the courts have rejected the enhancement of the lodestar through the consideration of a contingency fee arrangement between a plaintiff and his counsel.  Defendant also objects to an award of attorney fees as there is insufficient evidence to support the verdict so plaintiff is not a prevailing party and there should be a reevaluation of the calculation of the lodestar and the determination of a reasonable fee based on the insufficient evidence.

The Court is persuaded, pursuant to Ark. Code Ann. §16-22-308 and the provision in the contract between the parties for an award of attorney's fees, that an award of reasonable attorney's fees is appropriate in this case.  While defendant has argued that lodestar should be reevaluated in light of its post-trial motion, the Court has now rejected defendant's post-trial motion in its entirety.

The Court notes that defendant has not specifically questioned the number of hours, the hourly rate or the costs incurred as documented in the affidavit of Alan Perkins regarding the attorneys and paralegals involved.  In addition, the Court, after reviewing the submissions, is persuaded that the requested number of hours, the hourly rate, and the costs incurred are indeed reasonable.  However, the Court agrees with defendant that an enhancement that would be the amount allowed under the contingent fee agreement between plaintiff and his attorneys is not warranted under these circumstances.  Therefore, the Court will award plaintiff attorney's fees of $58,391.25 and costs of $1,972.34 for a total award of $60,363.59.

Accordingly, plaintiff's June 6th motion (#43) for attorney fees and costs is granted in part and denied in part.  Plaintiff is awarded attorney fees and costs in the amount of $60,363.59. Defendant's June 9th renewed motion (#46) for judgment as a matter of law, motion for new trial, and alternative motion to alter and amend the judgment is hereby denied.

IT IS SO ORDERED this 4th day of December, 2006.


UNITED STATES DISTRICT JUDGE